**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| AARON C. HAGAN, | DOCKET NUMBER |
| Appellant, | DC-0752-20-0738-I-1 |
| v. | |
| DEPARTMENT OF VETERANS AFFAIRS, | DATE: May 18, 2026 |
| Agency. | |

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Ernest J. Wright</u>, Esquire, Jacksonville, North Carolina, for the appellant.

<u>Nanita O. Cornish</u>, Esquire, Hampton, Virginia, for the agency.

**BEFORE**

Henry J. Kerner, Vice Chairman
James J. Woodruff II, Member

**REMAND ORDER**

The appellant has filed a petition for review of the initial decision, which dismissed his alleged involuntary transfer appeal for lack of jurisdiction. For the reasons discussed below, we GRANT the appellant's petition for review, VACATE the initial decision, and REMAND the case to the Washington Regional Office for further adjudication in accordance with this Remand Order.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

## BACKGROUND

The appellant was employed as a GS-6 Police Officer at the agency's Medical Center in Hampton, Virginia (VAMC). Initial Appeal File (IAF), Tab 1 at 2, Tab 5 at 57. According to the appellant, prior to July 2016, his second-level supervisor created a hostile work environment based on race due to his discriminatory statements and his promotion of white officers over black officers. IAF, Tab 1 at 6.

In July 2016, the appellant suffered a compensable on-the-job injury. IAF, Tab 1 at 9, Tab 5 at 36. He was off work, initially on continuation of pay and subsequently on accrued leave, through September 8, 2016. IAF, Tab 1 at 9, Tab 5 at 36-50. He worked intermittently on light duty for approximately 10 days between September 9 and October 16, 2016. IAF, Tab 1 at 6, 9, Tab 5 at 50-52. During this period, he requested an accommodation, seeking removal from the Police Service for harassment, violation of light-duty restrictions, depression, and anxiety. IAF, Tab 5 at 31-35. On October 17, 2016, he began an extended absence, which the agency designated as an absence without leave (AWOL). IAF, Tab 1 at 9, Tab 5 at 52-56. In November 2016, the agency denied his request for an accommodation stating that "[a] claim of hostile work environment does not fall under the purview of [a reasonable accommodation] request." IAF, Tab 5 at 28-30. The following month, the appellant's second-level supervisor advised him that he was considered AWOL and this leave status could lead to disciplinary action, "up to and including removal." IAF, Tab 6 at 9-11.

In January 2017, the appellant filed a formal equal employment opportunity (EEO) complaint with the agency, alleging that the agency discriminated against him on the basis of a disability when it denied him reasonable accommodation and designated his leave as AWOL. IAF, Tab 1 at 9. Approximately 6 months after he stopped working in October 2016, the appellant began a temporary appointment as a GS-3 Store Associate with the Department of Defense (DOD). IAF, Tab 5 at 24. Upon notification from DOD's Defense Logistics Agency

(DLA) that the appellant had accepted the temporary appointment, the agency implemented his transfer action, which effectively terminated his employment with the agency. *Id.* at 21-24. According to the appellant's submission, his temporary DOD appointment ended in August 2017. IAF, Tab 1 at 10. In May 2018, the appellant filed a second formal EEO complaint alleging that the agency terminated him in retaliation for his prior EEO complaint. *Id.* at 12, 19. The agency issued a final agency decision finding that the appellant failed to prove that his termination was motivated by EEO reprisal. IAF, Tab 1 at 8-18. Less than 30 days later, the appellant filed the instant appeal. *Id.* at 1, 3.

In his Board appeal, the appellant asserted that the agency involuntarily terminated him. *Id.* at 6-7. The agency moved to dismiss the appeal for lack of jurisdiction, and the appellant responded to the agency's motion. IAF, Tab 5 at 5-8, Tab 6. Without holding his requested hearing, the administrative judge dismissed the appeal for lack of jurisdiction on the grounds that the appellant failed to nonfrivolously allege that his transfer to DOD was involuntary. IAF, Tab 1 at 2, Tab 7, Initial Decision (ID) at 13-21. The administrative judge found that the agency did not coerce the appellant's transfer to a new Federal agency by failing to accommodate him or creating unreasonably difficult working conditions. ID at 15-21.

The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 1. The agency has filed a response to the appellant's petition. PFR File, Tab 3.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>The administrative judge properly identified the appellant's claim as a constructive adverse action claim.</u>

The administrative judge adjudicated the appellant's claim as a constructive adverse action. ID at 11. The parties do not question this identification of the claim on review, and we agree that the action here is

appropriately treated as a constructive adverse action. However, because the administrative judge did not explain her reasoning, we do so here.

Under chapter 75 of Title 5, the Board has jurisdiction to review an agency's action removing, demoting, suspending for more than 14 days, or furloughing for 30 days or less, a Federal employee. 5 U.S.C. §§ 7511(a)(1), 7512(1)-(5), 7513(d); *Perez v. Merit Systems Protection Board*, 931 F.2d 853, 855 (Fed. Cir. 1991). In *Abbott v. U.S. Postal Service*, 121 M.S.P.R. 294, ¶¶ 9-10 (2014), the Board clarified that when the agency initiates such an action, it is appealable to the Board as an actual, rather than a constructive, action. It contrasted an agency-initiated action with a constructive adverse action, which is one that appears to be voluntarily initiated by the employee but actually is not. *Id.*, ¶¶ 7, 9. The Board has recognized that employee-initiated actions that appear voluntary on their face are not always so and that the Board may have jurisdiction over such actions as constructive adverse actions under chapter 75. *Bean v. U.S. Postal Service*, 120 M.S.P.R. 397, ¶ 7 (2013).

Although the agency completed a Standard Form 50 (SF-50) that implemented the appellant's transfer, it did not initiate his separation. IAF, Tab 5 at 21. Rather, the appellant initiated the action when he began a term appointment from DOD, in April 2017. IAF, Tab 1 at 7, Tab 5 at 24. In July 2017, DLA contacted the agency and advised it of his appointment with DOD. IAF, Tab 5 at 22-23. As the administrative judge observed, the agency then processed what it coded on the appellant's SF-50 as a "Termination-Appt In," consistent with the Guide to Processing Personnel Actions (Guide) issued by the Office of Personnel Management (OPM). *Id.* at 21; ID at 14; OPM, Guide, ch. 31 at 4, 6, 18, https://www.opm.gov/policy-data-oversight/data-analysis-documentation/personnel-documentation/processing-personnel-actions/gppa31.pdf. The Guide provides that when an employee has accepted a position with another Federal agency without a break in service, the first agency processes a separation using this designation. OPM, Guide, ch. 31 at 18. The "Remarks"

section of the SF-50 completed by the agency clarified that the appellant "transferred" to DOD. IAF, Tab 5 at 21. The Guide further specifies that "resignation is not required. Do not document the action as a resignation." OPM, Guide, ch. 31 at 26; *see* 5 C.F.R. § 210.102(b)(18) (defining a transfer as an employee's change in positions from one agency to another "without a break in service of 1 full workday"). Thus, the agency's processing of the appellant's separation was an administrative action resulting from his new appointment, which he has indicated he sought out and accepted. IAF, Tab 1 at 7. Accordingly, even assuming that, as alleged, the appellant was unaware that his new appointment would result in the termination of his prior appointment, we find that this does not convert his separation into an agency-initiated action. *Id.*

However, the fact that the appellant did not suffer an agency-initiated separation or transfer to DOD does not end our inquiry. The appellant may seek to establish Board jurisdiction by arguing that he accepted a position at another agency as a result of coercion or deception. *See Williams v. Merit Systems Protection Board*, 892 F.3d 1156, 1163 (Fed. Cir. 2018) (explaining that an involuntary action is appealable to the Board in certain circumstances). In such situations, the Board adjudicates the transfer as an alleged constructive removal.[2] *Roach v. Department of the Army*, 86 M.S.P.R. 4, ¶¶ 16-17 (2000); *Colburn v. Department of Justice*, 80 M.S.P.R. 257, ¶¶ 6-7 (1998).

Because the appellant nonfrivolously alleged that he took a second job with DOD due to his second-level supervisor's refusal to observe his light-duty restrictions, we remand the appeal for a jurisdictional hearing.

On review, the appellant reasserts that his second-level supervisor's coercive actions left him with no choice but to take a second job. PFR File, Tab 1 at 5; IAF, Tab 1 at 6-7, Tab 6 at 5-6. The administrative judge found that the appellant failed to make a nonfrivolous allegation that he had no choice but to

---

[2] Because it does not affect our analysis, we have referred to the alleged agency action as both an alleged involuntary transfer and constructive removal.

transfer due to the denial of reasonable accommodation and EEO retaliation. ID at 15-17. We disagree with the administrative judge and remand this appeal for a jurisdictional hearing.

An employee-initiated action, such as a transfer between agencies or resignation, is presumed to be voluntary, and thus outside the Board's jurisdiction. *Randall v. Department of Justice*, 105 M.S.P.R. 524, ¶ 11 (2007). In analyzing voluntariness, the touchstone is whether, considering the totality of the circumstances, factors operated on the employee's decision-making process that deprived him of freedom of choice in the matter. *Vitale v. Department of Veterans Affairs*, 107 M.S.P.R. 501, ¶ 19 (2007). Once the appellant presents nonfrivolous allegations of Board jurisdiction—allegations of fact which, if proven, would establish the Board's jurisdiction—he is entitled to a hearing at which he must prove jurisdiction by a preponderance of the evidence. *Hosozawa v. Department of Veterans Affairs*, 113 M.S.P.R. 110, ¶ 5 (2010). When an appellant raises an allegation of discrimination in connection with a claim of involuntariness, the allegation may be addressed only insofar as it relates to the issue of jurisdiction and not whether it would establish discrimination as an affirmative defense. *Id.*

The Board has held that an appellant may show that his resignation was involuntary by demonstrating that the agency denied a request for reasonable accommodation. *Williams v. Department of Agriculture*, 106 M.S.P.R. 677, ¶ 13 (2007); *Hosozawa*, 113 M.S.P.R. 110, ¶¶ 6-7 (remanding an appeal for a jurisdictional hearing when the appellant alleged that her resignation was involuntary as a result of the agency's denial of her request for a reasonable accommodation that, according to her doctor, would have permitted her to continue to work full-time despite her medical condition). In his appeal, the appellant contended, in part, that his transfer was involuntary because the agency denied his request for a reasonable accommodation of his physical and mental health conditions. IAF, Tab 1 at 6-7, 9, Tab 5 at 28, 31, Tab 6 at 5.

An agency is required to provide reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability unless the agency can show that accommodation would cause an undue hardship on its business operations. 42 U.S.C. § 12112(b)(5)(A); *Haas v. Department of Homeland Security*, 2022 MSPB 36, ¶¶ 28-29; *Clemens v. Department of the Army*, 120 M.S.P.R. 616, ¶ 10 (2014); 29 C.F.R. §§ 1630.2(o)(4), 1630.9(a). Once an employee informs his employer that he needs a reasonable accommodation, the employer has a duty to engage in the interactive process to determine an appropriate accommodation. *Clemens*, 120 M.S.P.R. 616, ¶ 12.

The record before us contains a reasonable accommodation request from the appellant, asking that he be removed from the Police Service "due to continued threats, harassment, purposeful violation of light-duty restrictions [by his second-level supervisor] causing depression and anxiety." IAF, Tab 5 at 31. It also contains documentation dated October 27, 2016, from the appellant's licensed clinical psychologist in support of his request for an accommodation of removing him from his duties as a Police Officer temporarily. IAF, Tab 5 at 32-34, Tab 6 at 13-15. The psychologist diagnosed the appellant with "major depression," and stated "[he] is experiencing difficulty functioning secondary to his depression . . . [and] his condition renders him totally impaired with respect to all duties as an officer at this time." IAF, Tab 6 at 14. The agency denied the appellant's accommodation request as ineffective because hostile work environment claims were not part of its reasonable accommodation process. IAF, Tab 5 at 28-29.

To the extent the appellant was requesting a change in his supervisor as an accommodation, the agency's denial of that request does not support his claim that his transfer to DOD was involuntary. In most circumstances, an employer does not need to change a person's supervisor as a form of reasonable accommodation. *See Weiler v. Household Finance Corp.*, 101 F.3d 519, 526

(7th Cir. 1996); *Alden v. Department of Veterans Affairs*, EEOC Appeal No. 0120080620, 2011 WL 2515256, *5 (June 16, 2011); *see also* Equal Employment Opportunity Commission (EEOC), Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act (EEOC Guidance), Question 33, Notice 915.002 (Oct. 17, 2002), https://www.eeoc.gov/laws/guidance/enforcement-guidance-reasonable-accommodation-and-undue-hardship-under-ada. However, to the extent that the appellant advised the agency that his supervisor was violating the restrictions associated with his physical medical condition, i.e., his light-duty restrictions, this information should have caused the agency to engage in an interactive process to find an appropriate accommodation. *Clemens*, 120 M.S.P.R. 616, ¶¶ 10, 12; *see* EEOC Guidance, Question 33 (observing that an agency may need to change "supervisory methods" as a reasonable accommodation, and that an employee is protected from harassment based on his disability). Moreover, we interpret the appellant's request for removal from Police Officer duties at the Hampton VAMC as a request for a temporary reassignment to another service while he was being treated for depression. IAF, Tab 5 at 31-34. A reassignment to a vacant position may be a reasonable accommodation. 29 C.F.R. § 1630.2(o)(2)(ii).

The agency's failure to engage in the interactive process alone does not violate the Rehabilitation Act; rather, the appellant must show that this omission resulted in failure to provide reasonable accommodation. *Clemens*, 120 M.S.P.R. 616, ¶ 17. The record here is unclear as to whether the agency ever engaged in an interactive process with the appellant to determine other appropriate accommodations for his physical condition, or whether, had it done so, such a process would have proven fruitful. Further, it does not appear that the agency addressed the appellant's request for a reassignment to another service as an accommodation for his psychological condition.

The appellant has provided evidence that he informed the agency that his supervisor was not observing his medical restrictions and that the agency responded by denying his request without addressing his concerns. It further appears that his request for a reassignment to accommodate his psychological condition was ignored. Accordingly, we find that the appellant has made a nonfrivolous allegation that he had no choice but to accept a position with DOD for financial reasons because he was in an unpaid leave status and the agency was not complying with its reasonable accommodation obligations. IAF, Tab 1 at 7, Tab 5 at 28-31.

<ins>On remand, the administrative judge should allow the appellant to present evidence regarding his hostile work environment claim.</ins>

The appellant also reasserts on review that his decision to accept a position at DOD resulted from a hostile work environment. PFR File, Tab 1 at 5. The administrative judge found that his allegations, even if proven, were insufficient to establish that he was compelled to transfer to another agency. ID at 17-19. In light of our remand of this appeal, the administrative judge should afford the appellant an opportunity to develop the record regarding his allegedly hostile work environment.

As discussed above, the issue here is whether, considering the totality of the circumstances, the appellant has nonfrivolously alleged that his working conditions were made so difficult that a reasonable person in his position would have felt compelled to accept a second job. *See Vitale*, 107 M.S.P.R. 501, ¶ 20. The appellant alleged that, among other things, his second-level supervisor promoted white officers while black officers were turned down, and made discriminatory comments to him and other officers such as, "I'm allowed to be racist, just not allowed to show it!" and "Your job is to enforce the ideals and laws our White four [sic] fathers established!"[3] IAF, Tab 1 at 6. In addition, an

---

[3] The administrative judge correctly found that the appellant's vague and generalized allegations below that he was "subjected to constant harassment, threats and reprisal at

EEOC administrative judge found in connection with the appellant's first EEO complaint that the appellant's second-level supervisor "interfered with the exercise of [the appellant's] rights under the Rehabilitation Act when he denied [the appellant] access to his doctor's appointment to complete his request for reasonable accommodation."[4]  IAF, Tab 1 at 11, Tab 6 at 17-21.

While some detail is lacking, particularly as to when these incidents occurred, we need not determine whether these allegations alone are sufficient to meet the appellant's jurisdictional burden.  As discussed above, the appellant has nonfrivolously alleged jurisdiction based on the agency's alleged failure to accommodate his physical restrictions.  The appellant's second-level supervisor's alleged comments and actions may constitute part of the totality of the circumstances related to his involuntary transfer claim.  Therefore, the administrative judge should permit the appellant to present evidence and argument as to these events on remand.  *See Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶¶ 8, 10, 23 & n.7 (2015) (observing in an individual right of action appeal that an appellant's allegation that an agency official made unfavorable comments during his midterm progress review meeting could

[4] The hands of [his second-level supervisor]" failed to raise a nonfrivolous allegation of jurisdiction over his appeal.  ID at 17-18; IAF, Tab 1 at 6; *see Green v. Department of Veterans Affairs*, 112 M.S.P.R. 59, ¶ 11 (2009) (finding the appellant's vague and general claims that a coworker was spreading rumors about him and "trying to get back at [him] for some reason" were not nonfrivolous allegations that he was forced to resign as a result of intolerable working conditions); 5 C.F.R. § 1201.4(s)(1) (defining a nonfrivolous allegation, in pertinent part, as one that is more than conclusory).

[4] The EEOC decision is not in the record but is acknowledged by the agency in a final agency decision that the appellant submitted below.  IAF, Tab 1 at 11.  The appellant alleged below that the action underlying this EEOC decision is that "at a private medical appointment [his second-level supervisor] aggressively demanded that [he] leave [his] appointment and loudly stated 'You work for me! Remember that now leave!'"  IAF, Tab 1 at 6.  The administrative judge should consider this finding of discrimination, as well as other evidence presented by the parties regarding the underlying incident on remand, in determining whether the appellant proved jurisdiction by preponderant evidence.  *See Coufal v. Department of Justice*, 98 M.S.P.R. 31, ¶¶ 26-29 (2004) (determining an appellant had made nonfrivolous allegations that her retirement was the result of a hostile work environment).

constitute part of the totality of the circumstances related to the appellant's involuntary resignation/retirement claim).

The appellant's nonfrivolous allegation of involuntary transfer is not defeated by the availability of other avenues of redress.

The administrative judge concluded that the appellant could have performed only the duties that were within his medical restrictions and continued to pursue his first EEO complaint or pursued a reasonable accommodation rather than absenting himself from work or transferring to another agency. ID at 16-17. The Board has held that an employee has an obligation to act reasonably, not assume the worst, and not jump to conclusions. *See Axsom v. Department of Veterans Affairs*, 110 M.S.P.R. 605, ¶ 17 (2009). In addition, whether an employee had the option to stand and "fight" is also relevant to a determination of the voluntariness of a resignation. *See, e.g., Garcia v. Department of Homeland Security*, 437 F.3d 1322, 1329 (Fed. Cir. 2006) (en banc), *superseded by regulation on other grounds as stated in Kingsley v. U.S. Postal Service*, 123 M.S.P.R. 365, ¶ 10 (2016). Here, however, contrary to the administrative judge's finding, the appellant could not have continued to perform the duties as a Police Officer within the medical restrictions for his physical condition without violating the recommendation of his psychologist that he be reassigned away from the Police Service as an accommodation for his psychological condition. Furthermore, while the appellant began the temporary appointment as a GS-3 Store Associate with DOD only several months after he filed his first EEO complaint, the record indicates that the complaint had not even been heard more than 1 year later—as of April 2018. IAF, Tab 5 at 16. Under the circumstances as they existed here, with the appellant unable to perform his duties and in unpaid status for an extended period, we find that his decision not to wait indefinitely for his EEO complaint to be adjudicated before seeking other work does not significantly undercut his contention that his decision was involuntary.

In sum, considering the totality of the circumstances, we find that the appellant's allegations, if proven, could establish that he lacked a meaningful choice in the matter and that it was the agency's improper actions that deprived him of that choice. As such, the appellant is entitled to his requested hearing. IAF, Tab 1 at 2; *see Hosozaw*a, 113 M.S.P.R. 110, ¶ 5.

<u>On remand, the administrative judge should clarify and provide jurisdictional notice to the appellant regarding what appears to be an alleged denial of restoration.</u>

When the appellant returned to duty following his compensable injury, he was given what he identified below as a light-duty assignment accommodating the medical restrictions related to his compensable injury. IAF, Tab 1 at 6, Tab 5 at 13, 31. He also alleged, as discussed above, that after he returned to work following his on-the-job injury, his second-level supervisor ordered him to perform duties that the supervisor was aware were beyond the appellant's medical restrictions and outside the scope of his light-duty assignment. IAF, Tab 1 at 6.

If true, the appellant's claim could be an alleged denial of restoration, which could provide an additional basis for a jurisdictional finding and a determination of agency liability on the merits. *See Jenkins v. U.S. Postal Service*, 2025 MSPB 6, ¶ 14 & n.2, ¶¶ 19-21, ¶ 26 n.4 (remanding a constructive suspension claim on the basis that it was not subsumed within the appellant's restoration appeal regarding the same absence and advising that on remand the case could be joined with the appellant's pending restoration appeal). Under certain circumstances, a restoration may be deemed so unreasonable as to amount to a denial of restoration within the Board's jurisdiction. *Kingsley*, 123 M.S.P.R. 365, ¶ 13. For example, a claim that restoration was effectively denied may involve allegations that a partially recovered appellant is incapable of performing the job duties of the position to which he was restored. *Id.* Generally, the acceptability of an offer of modified duty related to a compensable injury is

determined by the Office of Workers' Compensation Programs. *Paszko v. U.S. Postal Service*, 119 M.S.P.R. 207, ¶ 9 (2013).

An appellant must receive explicit information on what is required to establish an appealable jurisdiction issue. *Burgess v. Merit Systems Protection Board*, 758 F.2d 641, 643-44 (Fed. Cir. 1985); *see Kingsley*, 123 M.S.P.R. 365, ¶ 11 (explaining the jurisdictional burden when an appellant alleges a denial of restoration as a partially recovered employee). An administrative judge's failure to adequately set forth the jurisdictional elements for a restoration appeal, as here, necessitates remand. *Hogarty v. U.S. Postal Service*, 101 M.S.P.R. 376, ¶ 13 (2006). The administrative judge did not address the appellant's potential denial of restoration claim or provide notice to the appellant regarding how to establish jurisdiction over such a claim.

On remand, the administrative judge should clarify the nature of this claim and advise the appellant of how to establish jurisdiction over an alleged denial of restoration. If she determines that the appellant established jurisdiction over his appeal as an alleged denial of restoration, she may adjudicate that claim as appropriate. Regardless of whether the appellant's allegations regarding his second-level supervisor's actions arise out of his compensable injury, or if he otherwise fails to establish jurisdiction over them as a denial of restoration, the administrative judge should address the Board's jurisdiction over the appellant's alleged involuntary transfer.

**ORDER**

For the reasons discussed above, we remand this case to the regional office for further adjudication in accordance with this Remand Order.

FOR THE BOARD: _____

*Gina K. Grippando*

Gina K. Grippando
Clerk of the Board

Washington, D.C.